IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| WILLIAM R. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  5:04-0329 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case is presently pending before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, William R. Smith (hereinafter referred to as "Claimant"), filed an application for DIB on October 9, 2002, alleging disability as of May 23, 2000, due to back injury, diabetes, mental illness, and pain from an arm and shoulder injury.  (Tr. at 49-51, 29, 35.)  The claim was denied initially and upon reconsideration.  (Tr. at 29-33, 35-36.)  On May 8, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ).  (Tr. at 37.)  The hearing was held on January 15, 2004, before the Honorable David S. Antrobus.  (Tr. at 329-43.)  By decision dated January 28, 2004, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 10-21.)  The ALJ's decision became the final decision of the Commissioner on March 12, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 5-7.)  On April 5, 2004, Claimant

brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.)  Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of thoracic strain, diabetes mellitus and depression. (Tr. at 15.)  At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 15.)  The ALJ then found that Claimant had a residual functional capacity for sedentary work with additional limitations, including performance of only simple, repetitive work, no exposure to hazards such as heights and/or dangerous machinery, limited contact with the public, and only low to moderate levels of stress.  (Tr. at 19.)  As a result, Claimant could not return to his past relevant work.  (Tr. at 21, Finding No. 7.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as hand packer, assembler, and cashier, which exist in significant numbers in the national economy.  (Tr. at 20.)  On this basis, benefits were denied.  (Tr. at 20-21.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

3

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on April 19, 1973, and was 30 years old at the time of the administrative hearing.  (Tr. at 49.)  Claimant has a high school education and completed vocational training in welding.  (Tr. at 68.)  In the past, he worked as a laborer and welder. (Tr. at 339.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ erred in assessing Claimant's pain and credibility; (2) the ALJ failed to consider Claimant's impairments in combination; and (3) the ALJ relied upon only part of the evidence of record.  The Commissioner asserts that the decision is supported by substantial evidence.

1. Pain and Credibility

4

Claimant first argues that the ALJ improperly evaluated his subjective complaints of pain and erred in finding Claimant not entirely credible.  Claimant asserts that the ALJ failed to properly support his credibility findings and that he clearly has "conditions which could reasonably be expected to cause the type of pain that he complained of." (Pl.'s Br. at 12.)  Claimant contends that the evidence of record "screams disability." (Pl.'s Br. at 11.)  The Commissioner argues that the ALJ's analysis was in accordance with the applicable law and Regulations.

A two-step process is used to determine whether a claimant is disabled by pain.  First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged.  20 C.F.R. § 404.1529(b) (2004); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence."  Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).  Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990).  A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. § 404.1529(c)(4) (2004).  Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such

5

as pain, which we will consider include:

> (I) Your daily activities;

> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.

> (iii) Precipitating and aggravating factors;

> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the

6

individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

As previously noted, Claimant makes no specific arguments regarding pain and credibility. He does not argue that the ALJ failed to make the threshold finding or that the ALJ failed to conduct a proper two-step analysis. Claimant simply cites to evidence in the record of his impairments, such as thoracic strain and diabetes. (Pl.'s Br. at 12.) He does not argue that the ALJ failed to consider the appropriate factors. Claimant points to no specific portion of the ALJ decision which he finds to be erroneous or incomplete.

First, the ALJ found that Claimant had produced evidence of impairments that could reasonably be expected to produce the kind of pain and symptoms Claimant alleged. (Tr. at 18-19.) He found, however, that Claimant's impairments were not totally disabling and did not preclude the performance of all substantial gainful activity. (Tr. at 18.) The ALJ concluded that "[s]uch pain and other symptoms as the claimant experiences do not preclude the performance of all social and physical activities as described in his testimony and in written documentation submitted by him for the record." (Tr. at 16.) Thus, the ALJ engaged in the first step of the two-step process.

The ALJ noted the two-step process for evaluating a claimant's pain and other symptoms,

specifically stating the factors to be considered in evaluating the intensity and persistence of a claimant's pain. (Tr. at 16.) The ALJ then summarized Claimant's testimony and the medical evidence of record in analyzing the intensity and persistence of Claimant's pain and other symptoms. (Tr. at 16-19.)   The ALJ clearly considered the requisite factors, noting that Claimant alleged headaches, neck pain, shoulder pain, and back pain since a car accident in May 2000. (Tr. at 16, 334.) He reported that his pain is constant and that medications help some. (Tr. at 16, 334-35.) The ALJ noted that side effects of the medication included dizziness and nausea. (Tr. at 16, 335.) The ALJ found that written documentation submitted into the record "tends to reflect a greater level of activity than did the claimant's testimony." (Tr. at 16.)   The ALJ noted that on written reports, Claimant reported fishing, hunting, watching television, and visiting friends and relatives. (Tr. at 16, 90, 105.) The ALJ then summarized the relevant medical evidence, noting that it does not "overcome the undersigned's doubts as to the claimant's credibility as they (the medical records) do not substantiate the severity of residual effects alleged by the claimant." (Tr. at 16.) The ALJ noted that following the May 2000 car accident, x-rays of Claimant's cervical, thoracic, and lumbar spine were all normal. (Tr. at 16, 135, 132-34.)   In July 2000, Claimant had no muscle weakness and no neurological deficits and straight leg raising was negative. (Tr. at 17, 135.)   The ALJ noted that Claimant was seen on a monthly basis from May 2000 to November 2001 by Dr. Pettry-Hultman for follow-up of the thoracic strain. (Tr. at 17.) When Dr. Pettry-Hultman recommended an orthopedic referral, Claimant refused, stating that his knee was better. (Tr. at 17, 262.)  The ALJ noted that there is no indication of any regular ongoing treatment since November 2001. (Tr. at 17.)

In March 2001, Claimant reported being able to do anything he wanted as long as it did not

involve lifting more than 30 pounds. (Tr. at 239.)  The ALJ stated that although Claimant received psychological treatment at FMRS beginning in April 2001, he reportedly called on January 18, 2002 and advised that he was no longer in need of treatment. (Tr. at 17-18, 214-20.)  The ALJ noted that Claimant underwent a functional capacity evaluation on February 18, 2002, which showed evidence of symptom magnification as well as the ability to perform work at the light to medium level. (Tr. at 17, 227.)     State agency physicians reviewed the record and opined that Claimant retained the functional capacity for medium work with some occasional postural limitations. (Tr. at 114-21, 306-14.)

After a review of the entire record, the Court finds the ALJ's analysis of Claimant's pain and credibility proper and in accordance with the applicable law and Regulations. The ALJ took into account some of Claimant's subjective complaints in determining the RFC.  As previously noted, the ALJ limited Claimant to the performance of sedentary work involving only simple, routine tasks, no exposure to hazards, limited contact with the public, and only low to moderate levels of stress. (Tr. at 19.)  As the Claimant has not argued that the ALJ's discussion of the requisite factors was improper or incomplete, no further discussion on this point is warranted. The ALJ's determination on Claimant's pain and credibility is therefore supported by substantial evidence.

2.  ALJ's Consideration of Impairments in Combination

The Claimant also argues that the ALJ did not properly consider the combined effects of his impairments.  (Pl.'s Br. at 13.)  He argues that the ALJ failed to consider his thoracic strain, diabetes mellitus, and depression.  The Commissioner responds, however, that the ALJ properly considered the combined effect of Claimant's alleged impairments.

The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 404.1523 (2004). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398. (4th Cir. 1974.) The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

The ALJ clearly stated in his decision that "claimant has thoracic strain, diabetes mellitus and depression, impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to [sic] one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. at 15.) The ALJ therefore specifically considered these impairments and noted the duty to consider Claimant's impairments in combination. (Tr. at 15, 14.) The Claimant fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of Claimant's impairments in combination and "fractionalized" the impairments. (Pl.'s Br. at 13.) The ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence.

10

3. <u>Reliance Upon Only Part of Evidence of Record</u>

Claimant next argues that the ALJ relied upon only part of the evidence of record in denying this claim. (Pl.'s Br. at 13-14.) Claimant argues that the ALJ discounted evidence regarding Claimant's knee, headaches, side effects of medication, and the report of a physical therapist indicating that Claimant was unable to work. (Pl.'s Br. at 13-14.) Claimant also argues that the ALJ failed to consider that Claimant had a GAF of 55.[1] (Pl.'s Br. at 14.) The Commissioner asserts that this argument is without merit.

In his decision, the ALJ noted that he had reviewed all of the evidence of record in making a determination. (Tr. at 13, 18, 20.) As previously noted, the ALJ discussed the medical evidence in his opinion, and in fact, addressed evidence regarding some of the ailments Claimant raises here. (Tr. at 15-19.) The ALJ's summary thoroughly discusses the medical evidence of record. (Tr. at 15-19.) Claimant points to no evidence of debilitating headaches. With regard to the side effects of Claimant's medication, the ALJ noted that Claimant suffered from dizziness and nausea, and included this in the discussion of Claimant's credibility. (Tr. at 16.) With regard to Claimant's knee, the ALJ noted that Claimant saw Dr. Pettry-Hultman in May 2002 for complaints of right knee pain. (Tr. at 17, 262-63.) When the doctor recommended an orthopedic referral, Claimant called in June 2002 and reported that his knee was better and he did not want a referral. (Tr. at 17.) The ALJ noted that there was no regular ongoing treatment since November 2001. (Tr. at 17.)

_____

[1] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> ("DSM-IV") 32 (4th ed. 1994).

In support of his position, Claimant refers to the opinion of disability offered by a physical therapist in October 2002. (Tr. at 249-50.) Physical therapist Lisa Muckleory conducted a functional capacity evaluation of Claimant and opined that the results indicated that he "is not able to work today." (Tr. at 249.)  She further stated, however, that once certain issues were resolved, including spinal alignment and resolution of soft tissue restrictions, Claimant would be able to move into "more work conditioning . . . ." (Tr. at 250.)   As the Commissioner notes, an opinion of total disability is not entitled to any significant weight regardless of its source.  See 20 C.F.R. § 404.1527(e)(1)-(3); 416.927(e)(1)-(3) (2004) (stating that a statement by a medical source that you are "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner, the source of which is not entitled to any special significance).   Additionally, the record reveals evidence inconsistent with this opinion.  In March 2001, Claimant reported that he could do anything he wanted as long as it did not involve lifting over 30 pounds. (Tr. at 239.)  Claimant was released from physical therapy in April 2001 to pursue work conditioning. (Tr. at 238.) By February 2002, the results of another functional capacity evaluation revealed that Claimant could perform light to medium work. (Tr. at 226-28.)

Additionally, contrary to Claimant's assertions, the ALJ clearly noted that Claimant's GAF was assessed at 55 in April 2001. (Tr. at 17-18, 217-20.)  The ALJ further noted, however, that this indicated only moderate symptoms and that there was no evidence in the record that the symptoms were ever more than moderate. (Tr. at 15, 18-19.)  The ALJ concluded that Claimant's mental impairments caused only mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild deficiencies of concentration, persistence, and pace; and no episodes of decompensation of extended duration. (Tr. at 19.)  The Claimant takes no issue with

these findings.

The Court finds that the ALJ properly considered all of the evidence of record, including the evidence of these impairments and the evidence of the physical therapist.  The Court finds Claimant's argument without merit, and finds that the ALJ's decision is supported by substantial evidence.

After careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, for the reasons set forth in this Memorandum Opinion and by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Memorandum Opinion to all counsel of record.

ENTER: September 21, 2005.

R. Clarke VanDervort
United States Magistrate Judge

13